**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARCELL DIXON, as Administratrix of the Estate of Haywood Dean Dixon, Jr., deceased, Plaintiff** | : | **No. 1:25cv1214** |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **YORK COUNTY PENNSYLVANIA; YORK COUNTY PRISON BOARD; JOHN/JANE DOE PRISON GUARDS 1–10; JOHN/JANE DOE PRIMECARE MEDICAL, INC EMPLOYEES 1–10; PRIMECARE MEDICAL, INC; SOLICITOR, JONELLE HARTER ESCHBACH; and WARDEN, ADAM OGLE, Defendants** | : | |

**MEMORANDUM**

Haywood Dean Dixon, Jr. died at the York County Prison. His mother, Plaintiff Darcel Dixon, is the administratrix of his estate. In this action, she asserts claims under 42 U.S.C. § 1983 and state law against the parties she believes are responsible for his death.[1] Those defendants include York County, its prison board, the warden, and the county solicitor ("York County Defendants"). Darcel Dixon's complaint also pursues civil rights claims against the prison

[1] Based on the Section 1983 claims, the court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343. The court has supplemental jurisdiction over her state law claims. 28 U.S.C. § 1367(a).

medical provider, PrimeCare Medical, Inc. ("PrimeCare").[2] Before the court are York County Defendants' and PrimeCare's motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, York County Defendants' motion will be granted in part and denied in part. PrimeCare's motion will be granted in its entirety.

**Background**[3]

As alleged in plaintiff's complaint, Haywood Dean Dixon, Jr. ("Dixon") suffered from several health conditions, including attention deficit hyperactivity disorder, diabetes, neuropathy, acute pancreatitis, hypertriglyceridemia, asthma, insomnia, sleep apnea, morbid obesity and mood disorder, including recurrent major depressive disorder. (Doc. 1, Compl. ¶ 14). He was a recipient of Social Security Disability benefits for his mental health conditions and had been since age seven. Id. ¶ 15.

On July 5, 2023, the Lower Windsor Township Police Department arrested Dixon and charged him with possession of a firearm, possession of a controlled

---

[2] Darcell Dixon has also named John and Jane Doe prison guards and prison medical employees. Pursuant to a stipulation, plaintiff will have 30 days following this ruling to file an amended complaint identifying those defendants. (Doc. 27).

[3] This background section is derived from the allegations in Darcell Dixon's complaint. At this posture, the court accepts all factual allegations as true and construes the complaint in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). The court, however, makes no determinations as to the veracity of these allegations.

substance, resisting arrest, and various traffic violations. Id. ¶ 1. He was unable to post bail and, as a result, authorities detained him at the York County Prison as of that date. Id.

Dixon stood six-foot-four and weighed 325 pounds. Id. Upon arrival at York County Prison, between 5:55 and 6:27 PM, he underwent a medical evaluation. Id. ¶ 19. A little over two hours later, between 8:43 and 8:55 PM, Dixon was examined in the medical ward. Id. ¶ 21

The next day, July 6, 2023, between 8:46 and 10:26 AM, Dixon was examined in the medical unit. Id. ¶ 22. Less than one hour later, between 11:11 and 11:26 AM, Dixon was back in the medical unit for another examination. Per the complaint, he spent most of the early to mid-afternoon lying in his cell. Id. ¶ 24.

In the mid-afternoon, between 4:07 and 4:50 PM, Dixon was in the medical unit for an examination. Id. ¶ 25. That evening, at 9:09 PM, Dixon was escorted by an unknown corrections officer to the medical unit. Id. ¶ 26. He sat on a bench until 9:11 PM. Id. At 9:14 PM, Dixon was lying on a bench while being questioned by medical personnel and corrections staff. Id. ¶ 27. He stated that "he was not going to hurt anyone and that he did not have the strength to walk or stand." Id.

At approximately 9:16 PM, the prison placed Dixon on suicide watch. Id. ¶ 28. He was placed in handcuffs and told to comply with officers' directions. Id. He was escorted to a single-person cell. Id. Upon entering the cell, Dixon stated to corrections officers that he felt sick and nauseous and could not bend down. Id. ¶ 30.

In the corner of that cell, Dixon was then strip-searched, facing away from the corrections officers. Id. ¶ 29. Three corrections officers were in the cell, with one officer pointing a taser at Dixon's back. Id. ¶ 31. At 9:17 PM, the two other officers removed Dixon's handcuffs. Id. ¶ 32. They instructed Dixon to remove his shoes and hand them to the officers without turning around. Id. Dixon pleaded with the officers, complained that he felt sick and nauseous, and told them he could not bend down to remove his shoes. Id. ¶ 33.

The officers repeated their instructions. Id. ¶ 34. Dixon responded that he was sick and wanted to lie down. Id. Officers told Dixon to comply with their orders, or he would be placed in a restraint chair. Id. ¶ 35.

The strip-search turned into a cell extraction. Id. ¶ 36. Officers called for a restraint chair and began the process of re-handcuffing Dixon. Id. ¶ 37. Dixon turned his head to tell the officers that he felt sick. Id. In response, and at approximately 9:20 PM, an officer deployed his taser. Id. Dixon remained standing. Id. ¶ 38. He screamed that he could not take his shoes off and asked

why officers tased him. Id. ¶ 39. At no point did Dixon act aggressively toward correctional officers. Id. ¶ 40. Yet, the same officer deployed his taser a second time. Id. ¶ 41. Dixon was brought to the floor. Id. Officers surrounded him and placed him in handcuffs. Id. Dixon continued to tell the officers that he did not feel good and that he could not breathe. Id. ¶ 44.

Officers dragged Dixon out of his cell as he was cuffed around his wrists and ankles. Id. ¶ 45. They brought him to his feet and placed him in a restraint chair with straps around his wrists, shoulders/axillary region, and lap. Id. At approximately 9:25 PM, officers placed a spit hood over Dixon's head. Id.

Dixon was taken to the medical ward at 9:27 PM. Id. ¶ 46. According to the complaint, taser deployment sites were visible and acknowledged. Id. But Dixon only received a cursory medical exam with no treatment administered. Id. ¶ 47. Further, no treatment was recommended, and no special action was taken to identify Dixon as a high medical risk inmate. Id.

At 9:39 PM, Dixon was moved to a segregated unit. Id. ¶ 48. His clothes were cut from his body while he was still in the restraint chair. Id. Dixon complained of pain and requested medical assistance during this process, which was ignored by the corrections officers. Id. ¶¶ 48–49.

Dixon, now naked, was placed in a single cell with the door shut behind him as of 9:55 PM. Id. ¶ 50. For approximately 30 minutes, Dixon cried out that he

could not breathe and that he needed help. Id. ¶ 51. At no point did any member of the staff inquire about Dixon's well-being during that time. Id. ¶ 52.

At 10:27 PM, a corrections officer placed clothes in Dixon's cell and then left. Id. ¶ 53. For the next 35 minutes, Dixon continued to yell that he could not breathe and that he needed help. Id. ¶ 54. No one responded, despite being within earshot. Id. ¶¶ 55–56.

At 11:02 PM, a corrections officer and a nurse appeared at Dixon's cell and told him to get dressed so that he could be evaluated at the medical unit. Id. ¶ 57. They did not remain at the cell. Id.

Dixon attempted to comply with the directive. Id. ¶ 58. He sat up, but he was breathing heavily and sweating. Id. He yelled that if he stood up, then he would fall. Id. With his pleas being ignored, Dixon tried to stand up and fell to the floor as of 11:08 PM. Id.

Dixon turned over onto his back, continuing to sweat and breathe heavily. Id. ¶ 59. He began yelling for help. Id. Five minutes later, at 11:13 PM, correctional officers entered his cell. Id. ¶ 60. The officers sat him up and handcuffed him, which caused increased distress. Id. ¶ 61. At 11:15 PM, Dixon collapsed. Id. ¶ 62. He laid on his side with heavy agonal-like breathing for approximately one minute. Id.

A medical emergency was called at 11:15 PM and emergency medical services ("EMS") were requested at 11:17 PM. Id. ¶ 63. Medical staff evaluated Dixon and started CPR as of 11:20 PM. Id. Dixon's handcuffs were removed at 11:21 PM. Id. ¶ 65. EMS arrived at 11:30 PM and continued CPR. Id. ¶ 66.

Dixon did not respond to CPR or any other actions of medical personnel. Id. ¶ 67. He was pronounced dead at 12:06 AM on July 7, 2023, less than three hours after being struck by a taser on two occasions. Id. ¶¶ 37–41, 67. He was 39 years old. Id. ¶ 14.

Darcel Dixon was appointed administratrix of her son's estate on January 4, 2024 in Lancaster County, Pennsylvania. Id. ¶¶ 3, 70. She filed this action on July 3, 2025.

Count I of the complaint asserts a Fourteenth Amendment excessive force claim against John and Jane Doe Prison Guards pursuant to Section 1983. Id. ¶¶ 77–84. Counts II and III advance state law claims for assault and battery and negligence against the Doe prison guards. Id. ¶¶ 85–99. Count IV alleges that the Doe guards, PrimeCare, and John and Jane Doe PrimeCare employees were deliberately indifferent to Dixon's serious medical needs in violation of the Fourteenth Amendment. Id. ¶¶ 100–108. In Count V, plaintiff asserts a Section 1983 municipal liability claim against Defendants York County, York County

Prison Board, York County Solicitor Jonelle Eschbach ("Solicitor Eschbach"), and Warden Adam Ogle ("Warden Ogle"). Id. ¶¶ 109–176.

In response to the above allegations, the York County Defendants and PrimeCare filed separate motions to dismiss. Having been fully briefed, those motions are ripe for disposition.

**Standard of Review**

Defendants advance their motions pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of a complaint's allegations when considering a Rule 12(b)(6) motion. To survive a motion to dismiss, "a complaint must provide 'a short plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pleaded which allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pa. State Univ., 138 F.4th 731, 743 (3d Cir. 2025). The second step involves reviewing the operative pleading and "disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual." Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citation modified). "The third step evaluates the plausibility of the remaining allegations." Id. In evaluating the plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

## Analysis

### I. York County Defendants' Motion to Dismiss

The York County Defendants move for partial dismissal of plaintiff's complaint. These defendants seek dismissal of Solicitor Eschbach from the Section 1983 portion of this action for failure to allege her personal involvement. The York County Defendants also seek to strike approximately 60 paragraphs from the complaint as immaterial and impertinent. Additionally, these defendants move to dismiss plaintiff's claim for attorney's fees and move to strike plaintiff's

request for damages "in excess of One Million dollars" as listed in the *ad damnum* clauses of the complaint.

**A. Solicitor Eshbach's Personal Involvement**

The York County Defendants argue that Solicitor Eshbach should be dismissed because the complaint is "completely devoid of any facts to establish her personal involvement in the events preceding the death of Haywood Dixon." (Doc. 16, Def. Br. in Supp., at 3). After reviewing the complaint, the court agrees.

In Section 1983 actions, a plaintiff "must portray specific conduct by state officials which violates some constitutional right." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (quoting Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970)). Liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Under the law, personal involvement can be shown "through allegations of personal direction or of actual knowledge and acquiescence." Id. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id.

In response to the motion to dismiss, plaintiff argues that her allegations supporting the municipal liability claim in Count V "plausibly relate directly to" Solicitor Eshbach "if proven true."[4] (Doc. 19, Pl. Resp., ¶ 12).

Upon review of the complaint, Count V details other matters prior to Dixon's death, including: 1) the death of another inmate, Everett Palmer, in 2018; 2) a grand jury report related to Palmer's death; 3) events dating back to 2013 regarding alleged ongoing inmate abuse and excessive force; and 4) the alleged trafficking of drugs into the prison. (Doc. 1, ¶¶ 118–176). This section of the complaint concludes: "The widespread custom of excessive force and inmate abuse was ratified and tolerated by York County and the York County Prison Board . . . [and was] a moving force behind the death of" Dixon. Id. ¶¶ 175–76.

Nonetheless, such averments do not equate to Solicitor Eschbach providing personal direction with respect to the alleged violation of Dixon's civil rights. The above allegations also do not denote actual knowledge and acquiescence with any particularity. Plaintiff's complaint merely alleges that Solicitor Eschbach is the county solicitor and a member of the York County

---

[4] Plaintiff did not file a brief in opposition to the York County Defendants' motion to dismiss. Pursuant to the Rules of Court for the Middle District of Pennsylvania, briefs in opposition are due 14 days following the filing of the brief in support. M.D. PA. L.R. 7.6. Under Local Rule 7.6, "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion." Id. Here, since plaintiff filed a document which asserts her opposition arguments, the court will not deem the motion to be unopposed.

Prison Board. (Doc. 1, ¶ 9). This is insufficient factual matter to allege personal involvement in a Section 1983 action.

The parties also dispute whether the complaint sufficiently alleges that Solicitor Eschbach was a final policymaker for the purposes of Section 1983 liability. An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question" and if "the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (citation modified). It is not intuitive under state law that Solicitor Eschbach would have final and unreviewable authority on behalf of York County, which is itself governed by a board of commissioners. 16 PA. CONS. STAT. §§ 310(4), 1122, 12301(a)(1). It is also not intuitive that she would have final and unreviewable authority as a member of the York County Prison Board, which is comprised of several other individuals. 61 PA. CONS. STAT. § 1723(b). Absent other allegations that the York County Defendants deviated from state law with respect to policymaking, dismissal of Solicitor Eschbach is warranted.

### B. Allegations of Prior Instances of Inmate Abuse and Excessive Force

The York County Defendants also move to strike the allegations in Paragraphs 118-176 as immaterial and impertinent. Paragraphs 118-176 are the aforementioned averments regarding other prior instances of alleged inmate

abuse and use of excessive force prior to Dixon's death in Count V of the complaint. The motion will be granted in part.

Under the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[.]" FED R. CIV. P. 12(f). Rule 12(f) motions are designed "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 243 (E.D. Pa. 2012) (citations omitted). Providing relief under Rule 12(f), however, is largely disfavored and such motions are typically denied "unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Grp. Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted).

To hold the municipalities liable for Dixon's death under Section 1983, the plaintiff must allege that a policy or custom inflicted the injury complained of in this case. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Custom can be proven by showing that a course of conduct "is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations omitted). To demonstrate that a custom was the proximate cause of Dixon's injuries, plaintiff also must allege that the municipality "had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions

against future violations, and that [its] failure, at least in part, led to [his] injury.'" Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Bielevicz, 915 F.2d at 851). After review, most of the allegations in Paragraphs 118-176 may be fairly construed as the plaintiff's attempts to meet such pleading standards.[5]

Nonetheless, some allegations in the complaint are immaterial. Several paragraphs allege that guards at York County Prison trafficked illegal drugs into the prison in the past. (Doc. 1, Compl. ¶¶ 169–74). Plaintiff also references an inmate being treated for an overdose in 2020 and the county putting the blame on that inmate for smuggling the drugs in himself. Id. ¶¶ 173–74. Such allegations are unrelated to the issues in question and bear no significant relationship to the claim for relief. There are no allegations that prison guards provided illegal drugs to Dixon prior to his death. Consequently, the court will strike Paragraphs 169–74 from the complaint as immaterial and impertinent.

### C. Attorneys' Fees and Request for Damages in Excess of One Million Dollars

Next and last, York County Defendants take issue with the *ad damnum* clauses of plaintiff's complaint. They seek dismissal of the plaintiff's request for

[5] In determining that such allegations help further plaintiff's theory of an unconstitutional custom, the court need not discuss whether such allegations also support any failure-to-train / deliberate indifference theory.

attorney's fees and move to strike plaintiff's request for damages in excess of one million dollars. Defendants' requests for relief will be granted.

Plaintiff's requests for relief in Counts I, IV, and V include a demand for attorney's fees under 42 U.S.C. § 1985 and § 1988. (Doc. 1, at 11–12, 15–16, 23). Section 1988 allows prevailing parties to recover their legal fees from the losing side of a civil rights action. Section 1985 is a three-part federal statute that addresses conspiracies to interfere with civil rights. It does not contain an attorney's fees provision.

In her response to the motion to dismiss, plaintiff indicates: "Admitted that Plaintiff does not seek fees under 42 U.S.C. § 1988. This appears to be a scrivener's error. Plaintiff clarifies that attorney's fees are sought under 42 U.S.C. § 1988 for the § 1983 claims properly pled in the complaint." (Doc. 19, ¶ 40). Given these internally inconsistent statements, the court will grant the motion and strike the claim for attorney's fees. Whether leave to amend should be granted will be discussed below.

Additionally, all five counts in the complaint request judgment in "an amount in excess of One Million Dollars ($1,000,000)[.]" (Doc. 1, at 11–16, 23). In response to York County Defendants' arguments on this issue, plaintiff indicates that the specific request for monetary relief should be stricken and that she be permitted to amend her *ad damnum* clause to indicate that she seeks damages

in excess of the jurisdictional limit. (Doc. 19, ¶ 44). The Local Rules also prohibit parties from claiming "any specific sum where unliquidated damages are involved." M.D. PA. L.R. 8.1. Consequently, the motion to dismiss will be granted in this regard.

## II. PrimeCare's Motion to Dismiss

Turning next to PrimeCare's motion to dismiss, plaintiff asserts a Section 1983 claim for deliberate indifference to a serious medical need against this defendant in Count IV. PrimeCare seeks dismissal from this action based on the vicarious liability verbiage used in the complaint. (Doc. 18, Br. in Supp., at 6–7). In response, plaintiff asserts that she has properly pled her claim against PrimeCare. (Doc. 20., Br. in Opp., at 7–8). After review, PrimeCare's motion to dismiss will be granted.

According to the complaint, PrimeCare contracted with York County to provide medical services within York County Prison. (Doc. 1, Compl. ¶ 7). To establish Section 1983 claim against PrimeCare, "plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Private prison healthcare providers act under the color of state law when they provide medical services to pretrial

detainees in county jails.[6] See West v. Atkins, 487 U.S. 42, 54–57 (1988) (holding that private physicians under contract to provide medical services to incarcerated individuals act under color of state law); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (parties did not dispute that a private healthcare corporation contracted by a county jail to treat pretrial detainees was a state actor). But "like municipalities, private corporations under contract to provide prison health services are liable only if their policies or customs caused the constitutional violation." Montanez v. Price, 154 F.4th 127, 142 (3d Cir. 2025) (citing Natale, 318 F.3d at 583–84; Monell, 436 U.S. at 694). That is, prison medical providers "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale, 318 F.3d at 583 (citing Monell, 436 U.S. at 691).

Plaintiff's complaint leaves no doubt as to the theory asserted against PrimeCare. She alleges, in relevant part, as follows:

> 104. John/Jane Doe PrimeCare Employees 1-10 observed [Dixon] in and outside his cell in a physically distressed, mentally unstable and/or disoriented state and took no actions to afford him medical care.

[6] PrimeCare's arguments in its motion to dismiss are advanced as if their status as a state actor is presumed. See Colon-Santiago v. Primecare, Inc., No. 1:25-CV-00966, 2025 WL 1872491, at *6 (M.D. Pa. July 7, 2025) ("Because Primecare, a non-government entity, allegedly provides medical services at [York County Prison], it is considered to act under color of state law for purposes of section 1983.").

> 105. Once Haywood was removed from his cell John/Jane Doe Prison Guards and John/Jane Doe PrimeCare Employees 1-10 failed to obtain and/or provide necessary emergency care required due to [Dixon's] obvious physical ailments.
>
> 106. This action or omissions of John/Jane Does Prison Guards 1-10, John/Jane Does PrimeCare Employees 1-10 and PrimeCare deprived [Dixon] of rights secured by the Constitution and the laws of the United States.
>
> . . .
>
> *108. Defendant PrimeCare is sued in this Count under a respondeat superior theory of liability as John/Jane Doe PrimeCare Employees 1-10 were acting within the course and scope of their employment with PrimeCare when they refused to provide [Dixon] with necessary medical care.*

(Doc. 1) (emphasis added).

No other portion of the complaint supplies allegations of an unconstitutional policy or custom. Thus, PrimeCare's motion to dismiss must be granted as a matter of law.

## III. Leave to Amend

In her responses to each of the motions, plaintiff requests leave to file an amended complaint. The court will begin with the issues raised by the York County Defendants. These issues include the absence of personal involvement regarding Solicitor Eschbach in the allegations and various requests to strike other allegations and demands for relief.

Based on the well-settled rule that leave to amend should be freely given, Foman v. Davis, 371 U.S. 178, 182 (1962), and the equally well-settled rule that the court must offer amendment in civil rights cases—"irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile[,]" Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), the court will provide plaintiff with 30 days to file an amended complaint against the York County Defendants addressing the deficiencies addressed by the court in this memorandum. A misplaced reference to a statute, a specific request for monetary relief, and impertinent allegations can easily be omitted from an amended complaint. If plaintiff has facts implicating Solicitor Eschbach's personal involvement in the alleged violations of Dixon's constitutional rights, those facts can be added to an amended pleading without any concerns about notice.

The issues raised by PrimeCare in its motion to dismiss are not as straightforward. As indicated above, plaintiff's complaint only asserted a claim against PrimeCare as derived from principles of vicarious liability, which is not cognizable under Section 1983. PrimeCare asserts that, due to the expiration of the statute of limitations, plaintiff should not be permitted to amend to add allegations of unconstitutional policies or customs. (Doc. 23, Reply Br., at 3–4).

The statute of limitations for Section 1983 claims arising in Pennsylvania is two years. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). "[A] cause of action accrues and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" Id. (quoting Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).

According to the complaint, Dixon died on July 7, 2023. (Doc. 1, ¶ 67). Based on this known injury, the statute of limitations period ended on July 7, 2025, or just a few days after plaintiff filed this action.

Federal Rule of Civil Procedure 15 governs amended pleadings. Generally, "[t]he function of Rule 15(a) . . . is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1473 (3d. ed. 2019)).

Rule 15(c) "allows certain new claims . . . added in an amended complaint to 'relate back' to the date of filing of the original complaint for statute of limitations purposes if certain conditions are met."[7] Mullin v. Balicki, 875 F.3d 140, 158 (3d Cir. 2017). The relation-back doctrine ameliorates the running of the statute of limitations and allows a court to treat a later-filed amended pleading

[7] Neither party addressed the relation-back doctrine in their filings.

as if it had been filed at the time of the initial pleading. Moore v. Walton, 96 F.4th 616, 623 (3d Cir. 2024) (citations omitted). Moreover, "Rule 15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004) (citing 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1496 (2d. ed.1990)). It allows "a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality." Glover v. F.D.I.C., 698 F.3d 139, 145 (3d Cir. 2012).

In relevant part, Rule 15(c) provides:

> (c) RELATION BACK OF AMENDMENTS.
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;

Thus, "Rule 15(c)(1)(B) normally entails a 'search for a common core of operative facts in the two pleadings.'" Glover, 698 F.3d at 145 (quoting Bensel,

387 F.3d at 310). Rule 15(c)(1)(B) is also a rule of "fair notice." Id. When an opposing party has been given fair notice of the general fact situation and the legal theory which the amending party proceeds, relation-back amendments should be allowed. Id. (citation omitted). On the other hand, a court should proceed with caution where an amendment significantly alters the nature of the proceeding by injecting new and unanticipated claims. Id.

After careful consideration of this issue, the court cannot conclusively determine whether amendment of the claim against PrimeCare would relate back or would be futile. Plaintiff has not filed a proposed amended complaint, and the court is unable to meaningfully engage in any fair notice analysis for the purpose of applying the relation-back doctrine. John and Jane Doe PrimeCare employees remain parties to this lawsuit. Therefore, the best course is to permit plaintiff to amend her claim against PrimeCare and address any statute of limitations arguments in response to a future dispositive motion. See Mullin, 875 F.3d at 158 ("in certain cases, the 'better approach' is to treat leave to amend and relation back/timeliness separately, determining first whether amendment should be allowed under the discretionary factors, and only then passing on whether the complaint relates back or is otherwise timely."). Plaintiff will be provided with 30 days to amend her claim against PrimeCare.

## Conclusion

For the reasons set forth above, the York County Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted except to the extent that it seeks to strike allegations other than Paragraphs 169–74 of the complaint. PrimeCare's motion to dismiss will also be granted. Plaintiff will have 30 days to file an amended complaint in accordance with this memorandum. An appropriate order follows.

Date: 9/17/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**